**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CODY SHONTEL HOWARD**                                                               **PLAINTIFF**

V.                                          **CASE NO.: 4:10CV00762 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                       **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cody Shontel Howard brings this action for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.[1]

**I.    Procedural History:**

Mr. Howard filed his application for SSI on March 29, 2007. (Tr. 71-73) He alleged disability since his birth on October 18, 1980, due to sickle cell disease.[2] (Tr. 83)

After the Commissioner denied the applications at the initial and reconsideration stages of administrative review, Mr. Howard requested a hearing before an ALJ. The ALJ held a hearing on October 28, 2008, and Mr. Howard appeared with his attorney. (Tr. 20-34)

---

[1] The Honorable Garry L. Brewer, Administrative Law Judge.

[2] Mr. Howard had several previous disability denials that would affect his eligibility date. At the administrative hearing, Mr. Howard amended his onset date to March 29, 2007, his protective filing date. (Tr. 23)

At the time of the hearing, Mr. Howard was a 28-year-old with an eleventh grade education. (Tr. 24) He was six feet tall and weighed approximately two hundred pounds. (Tr. 82) Mr. Howard had little work experience and no past relevant work. (Tr. 83-85) He was incarcerated from 2000 until 2006 for shooting someone. (Tr. 24)

At the hearing, the ALJ received testimony from Mr. Howard and vocational expert Dianne Smith. The ALJ also received written statements from Mr. Howard's mother and brother. (Tr. 122-123) On March 9, 2009, the ALJ issued a decision denying Mr. Howard benefits. (Tr. 11-19) The Appeals Council denied Mr. Howard's request for review on May 7, 2010. (Tr. 1-5) He filed the current Complaint for Review of Decision (docket entry #1) on July 2, 2010.

## II.     Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[3]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[3] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 416.920(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Mr. Howard had not engaged in substantial gainful activity since the onset of his alleged disability. (Tr. 13) Mr. Howard's sickle cell disease was a severe impairment. (Tr. 13) According to the ALJ, Mr. Howard did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13)

The ALJ determined that Mr. Howard retained the residual functional capacity ("RFC") to perform light work.[4] (Tr. 13-18) Mr. Howard had no past relevant work. (Tr. 18) Using Medical-Vocational Guideline Rule 202.18, the ALJ found Mr. Howard "not disabled" under the Act. (Tr. 18)

### III. Analysis:

#### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); 42 U.S.C. § 405(g). "Substantial evidence is

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when in involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

    B.    *Plaintiff's Arguments*

Mr. Howard claims the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ erred in finding that Mr. Howard did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) the ALJ erred in his RFC determination; and (3) the ALJ erred in discrediting Mr. Howard's allegations of pain and fatigue. (#9)

    C.    *Impairment Listing*

The ALJ found that Mr. Howard did not meet or equal the Listing requirements for a presumptive disability. (Tr. 13) Mr. Howard argues that he met both Listing 7.02 and 7.05. (#9, p. 25-27)

A claimant has the burden of proving that an impairment, or combination of impairments, meets or equals a Listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified

4

criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

   1.  *Listing 7.02*

In order to meet Listing 7.02 for chronic anemia, Mr. Howard must have had a hematocrit persisting at 30 percent or less, with the requirement of one or more blood transfusions on an average of at least once every two months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 7.02. Mr. Howard claims to have met this listing and offers his subjective complaints as proof. (#9, p. 25-27)

An accurate hematocrit is a blood test. It is not determined by an individual's subjective fatigue or pain. The medical record shows that Mr. Howard's hematocrit was consistently above 30. (Tr. 150, 154, 156, 168, 190, 192, 195, 198, 200) It appears that Mr. Howard's hematocrit fell below 30 during one period of hospitalization in 2005, while he was still incarcerated. (Tr. 204-206) It fell below 30 again on March 30, 2009, twenty-one days after the ALJ's decision. (Tr. 268) With the only two documented instances of below 30 hematocrit occurring almost four years apart, it is clear that Mr. Howard did not have a hematocrit persisting at 30 percent or less.

The medical record also fails to show multiple blood transfusions. Between the dates of Mr. Howard's alleged onset on March 29, 2007, and the Commissioner's final decision on March 9, 2009, there are no documented instances of blood transfusions. It appears Mr. Howard required one blood transfusion after the final decision. (Tr. 268)

This one instance does not meet the requirement for one or more blood transfusions on an average of at least once every two months. Without a hematocrit persisting at 30 percent or less, or the need for blood transfusions, Mr. Howard did not meet or equal Listing 7.02.

    2.    *Listing 7.05*

In order to meet Listing 7.05 for sickle cell disease, Mr. Howard would have to: (1) establish documented painful crises occurring at least three times during the five months prior to adjudication; (2) show that he required extended hospitalization (beyond emergency care) at least three times during the twelve months prior to adjudication; or (3) show that he suffered chronic, severe anemia with the persistence of hematocrit of 26 percent or less. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 7.05. Mr. Howard did not make any of these showings.

As noted, Mr. Howard's hematocrit count was consistently above 30. (Tr. 150, 154, 156, 168, 190, 192, 195, 198, 200) His hematocrit count fell below 26 only once, in July of 2004. (Tr. 205) At that time, he was described as "mildly anemic." (Tr. 204)

During the relevant period of alleged disability, Mr. Howard did not require extended hospitalization. It appears he visited the emergency room once for right knee pain. (Tr. 150-154) Clearly, Mr. Howard did not meet the extended hospitalization requirement for Listing 7.05.

Mr. Howard did not establish documented, painful crises occurring at least three times during the five months prior to adjudication. He testified that he had many painful

crises. (Tr. 26-27) As the Commissioner notes, however, Listing 7.05 requires *documented* painful crises. (#10, p. 5-6) There are no painful crises documented in the medical record occurring five months prior to adjudication. Expanding the time well beyond five months shows that Mr. Howard saw a physician for an upper respiratory infection and elbow pain. (Tr. 191, 194) He has failed to meet this criterion for Listing 7.05.

The medical record establishes that Mr. Howard did not meet any of the requirements for Listing 7.02 or 7.05.[5] Accordingly, the ALJ properly found that Mr. Howard did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    D.    *Residual Functional Capacity*

The ALJ bears the initial responsibility for assessing a claimant's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Despite Mr. Howard's arguments otherwise, it is the claimant's burden to prove RFC. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). (#9, p. 14, 15, 19, 20)

Mr. Howard's RFC is what he can do despite his limitations. 20 C.F.R. § 416.945. In determining a claimant's RFC, the ALJ must give "appropriate consideration to all of [the claimant's] impairments." *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (citing

---

[5] When asked about the listing at the administrative hearing, Mr. Howard's attorney stated, "I don't think he met it." (Tr. 31)

*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996)). Furthermore, an RFC finding must be based on competent medical evidence establishing the "physical and mental activity that the claimant can perform in a work setting." *Id.* The ALJ must determine RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ found that Mr. Howard retained the RFC to perform a full range of light work. (Tr. 13-18) Mr. Howard argues that due to pain, he did not retain any RFC. (#9, p. 13-21)

Mr. Howard sought treatment for one episode of priapism in August, 2004, and another episode in July, 2005, both while still incarcerated. (Tr. 184, 204-206) He alleged numerous additional episodes that resolved themselves. (Tr. 204) Mr. Howard did not have any more episodes after July, 2005. (Tr. 202)

On October 16, 2006, Mr. Howard underwent a consultative general physical examination. (Tr. 127-133) Mr. Howard stated that he was always tired, but he was also recovering from recent pneumonia. (Tr. 127-128) No physical limitations were noted. (Tr. 128-132) The physician found no significant physical impairment, but expected Mr. Howard to have frequent work absences. (Tr. 133)

On May 29, 2007, Dr. Robert Redd completed a physical RFC assessment regarding Mr. Howard's sickle cell disease. (Tr. 138-145) Dr. Redd found that Mr. Howard had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 140-142) His exertional limitations were consistent with the requirements of medium work activity. (Tr. 139) Dr. Redd found that Mr. Howard could lift or carry fifty pounds occasionally, twenty-five pounds frequently, could stand or walk for about six hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday. (Tr. 139) Dr. Redd noted that there was no sequential evidence to suggest recurrent sickle crises and no evidence of recurrent transfusions for clinically significant anemia. (Tr. 145)

On June 11, 2007, Mr. Howard saw Dr. Lori Bacon for complaints of right knee pain. (Tr. 150-151) Imaging showed a small joint effusion, but an otherwise negative examination. (Tr. 152) Recent drug testing was positive for cocaine, PCP, and marijuana. (Tr. 150, 156) Mr. Howard's hematocrit was above 37. Dr. Bacon noted that recent physical and medical history showed no systemic symptoms for sickle cell. (Tr. 150) Mr. Howard had not had any anemia over his last few visits. Dr. Bacon was "unsure if [Mr. Howard] really [had] sickle cell disease." (Tr. 150)

On January 16, 2008, Mr. Howard saw Dr. Brad Baltz for an initial evaluation of his sickle cell disease. (Tr. 197-199) Mr. Howard's hematocrit was 33.7. (Tr. 198) Mr. Howard had atypical chest pain, a cough, swollen joints, back pain, bone pain, and muscle

weakness. (Tr. 197) He was able to carry on normal activity, however, and had only minor signs or symptoms of disease. (Tr. 198) Dr. Baltz diagnosed Mr. Howard with sickle cell anemia and prescribed percocet as needed for pain and daily folic acid. (Tr. 198)

Six days after the initial evaluation, Dr. Baltz wrote a letter on Mr. Howard's behalf stating:

> Mr. Howard is under my care for sickle cell anemia. Due to the frequent pain crisis and anemia associated with his disease, Mr. Howard is not able to work on a full time basis. (Tr. 188)

The ALJ considered Dr. Baltz's opinion, but found that it was not entitled to controlling weight. (Tr. 15-16) This finding is thoroughly supported by the record.

Significantly, there is not a single pain crisis or instance of anemia evidenced by Dr. Baltz's records. (Tr. 188-200) Dr. Baltz's opinion is conclusory and does not describe any physical limitations. See *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (conclusory opinion by treating physician does not deserve controlling weight). His opinion on the ultimate issue of whether Mr. Howard could work is reserved exclusively to the Commissioner. See *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010) (medical source statement that claimant is "disabled" or "unable to work" not entitled to controlling weight because the issue is reserved for the Commissioner). Further, Dr. Baltz's opinion is inconsistent with other medical evidence, including his own observations. See *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ may disregard

or discount a treating physician's opinion if it is inconsistent with better medical assessments or inconsistent with the treating physician's other observations).

Mr. Howard saw Dr. Baltz for a second visit on February 28, 2008. (Tr. 194-196) At this appointment, Mr. Howard no longer had chest pain, swollen joints, back pain, bone pain, or muscle weakness. (Tr. 194) Mr. Howard was still able to carry on normal activity with only minor signs or symptoms of disease. (Tr. 195) Mr. Howard's hemoglobin was stable and he was advised to continue folic acid. (Tr. 195)

The final visit with Dr. Baltz reflected in the record occurred on April 4, 2008. (Tr. 191-193) At this visit, Mr. Howard had fatigue, generalized pain, fever, dyspnea on exertion, shortness of breath, and a cough. (Tr. 191) He was suffering from an upper respiratory infection. (Tr. 191-192) He had no chest pain, swollen joints, back pain, bone pain, or muscle weakness. (Tr. 191) Mr. Howard was still able to carry on normal activity with only minor signs or symptoms of disease. (Tr. 192) His hemoglobin was still stable. (Tr. 192) He was advised to continue taking folic acid and to begin medication for the upper respiratory infection. (Tr. 192) This appears to be Mr. Howard's third and final visit with Dr. Baltz.

As the ALJ noted, Mr. Howard's condition improved when he sought regular treatment. No physicians, except Dr. Baltz, placed any exertional limitations on Mr. Howard's activities. One physician questioned whether Mr. Howard even had sickle cell disease, as he did not exhibit any symptoms. (Tr. 150) Despite providing the opinion that

Mr. Howard could not work, Dr. Baltz consistently found that Mr. Howard was able to carry on normal activity with only minor signs or symptoms of disease. (Tr. 192, 195, 198) The ALJ noted that Dr. Baltz's opinion "appear[ed] based solely on statements made by the claimant at the initial evaluation and not on the treatment of the claimant over a long period of time." (Tr. 15) The medical record strongly supports this assertion. The record also supports a finding that Mr. Howard could perform at least light work. The evidence contrary to this finding rests almost exclusively on Mr. Howard's subjective complaints, which the ALJ found less than fully credible.

    E.    *Credibility Determination*

Mr. Howard argues the ALJ erred in discrediting his allegations of pain and fatigue. (#9, p. 21-25) When discrediting a plaintiff's subjective complaints, an ALJ must consider those complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). *Polaski* factors include: (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.* at 948.

The ALJ acknowledged Mr. Howard's allegations of disabling pain and fatigue. (Tr. 16-17) He also noted the written witness statements provided by Mr. Howard's mother and brother. (Tr. 17, 122-123) The ALJ's finding that Mr. Howard's pain and

fatigue would not preclude the performance of light work, however, is supported by substantial evidence in the record. (Tr. 17)

As the ALJ noted, the medical findings are not consistent with the degree of disabling pain and fatigue alleged by Mr. Howard. (Tr. 16) Mr. Howard testified that since leaving prison in 2006, he had sought hospital treatment for sickle cell crises eleven or twelve times. (Tr. 26) His attorney made sure all the medical records were in the administrative transcript. (Tr. 31) Yet in the entire medical record since 2006, there were only three or four hospital visits attributable to a sickle cell crisis. (Tr. 146-168, 189-200, 201-267, 268-271) One of these visits occurred after the administrative hearing where Mr. Howard testified. (Tr. 268-271) In two of those visits, the physicians expressed doubt that Mr. Howard had sickle cell disease. (Tr. 150, 168) During the one probable treatment for a sickle cell crisis, Mr. Howard had knee pain, but no weakness, no chest pain, no shortness of breath, normal range of motion, normal joints, and only mild pain with full motion. (Tr. 153-154)

Mr. Howard did not seek any medical treatment between April 5, 2008, and the date of the administrative decision on March 9, 2009. This span without treatment covers half of the relevant period of disability from March 29, 2007, to March 9, 2009.

Regarding the *Polaski* factors, Mr. Howard alleged that he was almost wholly incapacitated by his condition. (Tr. 16, 27-28, 101-106) Dr. Baltz's records directly

contradict this assertion. Dr. Baltz consistently found that Mr. Howard was able to carry on normal activity. (Tr. 192, 195, 198)

As to the frequency, duration, and intensity of pain, Mr. Howard testified that he had one or two major crises a month that required hospitalization and a week or two of rest. (Tr. 27-29) As the ALJ noted, the medical records conclusively showed that this testimony is not credible. (Tr. 16)

Mr. Howard took folic acid for his sickle cell disease and was occasionally prescribed Percocet for pain. Mr. Howard also took ibuprofen. (Tr. 118, 154) It appears this medication was effective, as there is no evidence of an increase in dosage throughout the medical records.

Mr. Howard had no functional restrictions outside the times of his alleged crises. (Tr. 31) Between crises, Mr. Howard would feel pretty good. (Tr. 27) The only reason given for a lack of employment was frequent absenteeism. (Tr. 31) The records, however, contradict Mr. Howard's assertion that sickle cell crises would cause frequent absenteeism.

The witness statements by Mr. Howard's mother and brother provide little useful information. (Tr. 122-123) They essentially repeat Mr. Howard's claim that he cannot work. See *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (relatives not qualified to give opinion regarding capacity to work; cumulative testimony properly rejected when claimant's allegations are discredited). The statements do not describe functional

14

limitations, frequency of crises, quantity or quality of pain during a crisis, or any observations that would be useful to a fact finder. (Tr. 122-123) The ALJ properly considered these statements when making his credibility determination. (Tr. 17)

The ALJ also considered Mr. Howard's lack of work history. (Tr. 17) Mr. Howard testified to some temporary work, but listed his longest held job as lasting one week. (Tr. 25, 84) This employment ended on October 15, 2006, because Mr. Howard had pneumonia. (Tr. 83) The termination of Mr. Howard's longest held employment had nothing to do with sickle cell disease.

The ALJ properly considered the record as a whole. (Tr. 17) Mr. Howard conceded that the only thing preventing him from working was the potential for frequent absenteeism. (Tr. 31) The ALJ found, however, that Mr. Howard's allegations of frequent hospitalizations were not credible. This finding is strongly supported by the record. The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). After reviewing all the evidence, this Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

**IV.   Conclusion:**

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the assessment of the consulting physicians, and the hearing transcript.

There is sufficient evidence in the record to support the Commissioner's determination that Cody Howard was "not disabled" under the Act.  Accordingly, Mr. Howard's appeal is DENIED.  The Clerk is directed to close the case.

    IT IS SO ORDERED this 1st day of July, 2011.

_____
UNITED STATES MAGISTRATE JUDGE